**William A. ALBAUGH, Republican Candidate in the Contested 1964 Maryland Primary Election for United States Senator Nomination,**

v.

**J. Millard TAWES, Governor of Maryland,**
**and**
**Lloyd L. Simpkins, Secretary of State,**
**For the State of Maryland.**

Civ. No. 15618.

United States District Court
D. Maryland.

Aug. 19, 1964.

Judgment Affirmed Nov. 9, 1964.
See 85 S.Ct. 194.

William A. Albaugh, pro se.

Thomas B. Finan, Atty. Gen., Robert F. Sweeney, Asst. Atty. Gen., Baltimore, Md., for defendants.

Before SOBELOFF, Chief Circuit Judge, THOMSEN, Chief Judge, and NORTHROP, District Judge.

PER CURIAM.

At the primary election held in Maryland on May 19, 1964, plaintiff, William A. Albaugh, was an unsuccessful candidate for the Republican nomination for United States Senator. On June 9, 1964, he filed the present action in this court seeking a judgment declaring that the District of Columbia is a part of the State of Maryland for purposes of United States Senator elections, and ordering defendants to treat that primary, and any future election based thereupon, as null and void because residents of the District did not vote in that election.

Plaintiff attacks the validity of Art. 33, section 143, Ann.Code of Md., as interpreted by the state officials. He requested the designation of a three-judge District Court to decide the issues raised, and such a court has been constituted. Defendants, the Governor and the Secretary of State of Maryland, moved to dismiss the complaint, and the plaintiff moved for summary judgment, as the case presents no disputed issue of fact.

The motion to dismiss is predicated on two grounds: (1) that the complaint fails to state a claim against the defendants upon which relief can be granted and (2) that the court lacks jurisdiction of the subject matter. No point is made of the propriety of a three-judge court to sit in this case.

In the light of recent decisions of the Supreme Court, we do not doubt the jurisdiction of a court to adjudicate the subject matter.

Defendants have raised various objections to plaintiff's standing and right to maintain the suit, but since he has raised the same question several times before in cases in which the merits have not been reached, it seems desirable to decide the merits here.

This court is clear that residents of the District of Columbia have no right to vote in Maryland elections generally, and specifically, in the selection of United States Senators.

Art. 1, section 8, cl. 17 of the Constitution of the United States provides:

"The Congress shall have power — * * *

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, * * *"

By Act of December 23, 1788, chapter 46, the General Assembly of Maryland authorized and required "the representatives of this state in the house of representatives in the congress of the United States * * * on the behalf of this state, to cede to the congress of the United States, any district in this state, not exceeding ten miles square, which the congress may fix upon and accept for the seat of government of the United States."

By an Act approved July 16, 1790, 1 Stat. 130, chapter 28, Congress enacted:

"Section 1. That a district of territory, not exceeding ten miles square, to be located [within certain limits on the Potomac River] be, and the same is hereby accepted for the permanent seat of the government of the United States. *Provided nevertheless*, That the operation of the laws of the state within such district shall not be affected by this acceptance, until the time fixed for the removal of the government thereto, and until Congress shall otherwise by law provide.

\* \* \* \* \* \*

"Sec. 6. That on the said first Monday in December, in the year one thousand eight hundred, the seat of the government of the United States shall, by virtue of this act, be transferred to the district and place aforesaid. \* \* \*"

On March 30, 1791, President Washington proclaimed the boundaries of a territory ten miles square, lying on both sides of the Potomac, as the seat of the national government. Included therein was the present District of Columbia, which had theretofore been a portion of the State of Maryland.

On December 19, 1791, the Legislature of the State of Maryland ratified the cession. Section 2 of chapter 45, of the Acts of 1791, provides:

"That all that part of the said territory called Columbia which lies within the limits of this State shall be, and the same is hereby, acknowledged to be forever ceded and relinquished to the Congress and Government of the United States, and full and absolute right and exclusive

jurisdiction, as well of soil as of persons residing or to reside thereon, pursuant to the tenor and effect of the eighth section of the first article of the Constitution of Government of the United States * * * *And provided also*, That the jurisdiction of the laws of this State over the persons and property of individuals residing within the limits of the cession aforesaid shall not cease or determine until Congress shall, by law, provide for the government thereof, under their jurisdiction, in manner provided by the article of the Constitution before recited."

On December 1, 1800, the District of Columbia became in fact the seat of the government of the United States, pursuant to 1 Stat. 130, ch. 28, § 6, supra; and on February 27, 1801, Congress enacted the "Organic Act of 1801" providing for the government of the District of Columbia. 2 Stat. 103, ch. 15.

Since the "Organic Act of 1801" it has been uniformly recognized by the executive, legislative and judicial branches of the government of the United States and of the State of Maryland that residents of the District of Columbia are no longer citizens of the State of Maryland. Indeed, in Reily v. Lamar, 2 Cranch. 344, 6 U.S. 344, 356, 2 L.Ed. 300 (1805), Chief Justice Marshall declared:

"By the separation of the district of Columbia from the state of Maryland, the complainant ceased to be a citizen of that state, his residence being in the city of Washington, at the time of that separation."

Plaintiff's arguments are based upon the fact that various statutes of the State of Maryland indicate that, during the period between 1790 and the "Organic Act of 1801," residents of the territory ceded by the State of Maryland may have been allowed to vote as residents of Prince George's County or Montgomery County. But plaintiff's arguments ignore the Organic Act, the decision of the Supreme Court in Reily, and the uniform construction given to the various acts cited above, over the period of more than a century and half following their enactments.

An order will be entered dismissing the complaint, with costs.